### In re CHICAGO, R. I. & P. RY. CO.
(ten cases).

Nos. 6000–6004, 6087–6091.

Circuit Court of Appeals, Seventh Circuit.

June 18, 1937.

796

Wright, Gordon, Zachry & Parlin (Cotton, Franklin, Wright & Gordon), of New York City (Edward L. Williams and Samuel A. McCain, both of New York City, of counsel), for appellants Traphagen and others.

Edward K. Hanlon, of New York City (Milton Weiss and Daniel F. Harrington, both of New York City, of counsel), for appellants Blaine and others.

Auchincloss & Duncan, of New York City (J. Donald Duncan and Charles R. Lowther, both of New York City, of counsel), for appellants Griffin and others.

Cyrus H. Adams, of Chicago, Ill., Thomas Epstein and Sullivan & Cromwell, all of New York City, and Ross & Watts, of Chicago, Ill., (Clarence H. Ross, of Chicago, Ill., and Emmet McCaffery and John C. Bruton, Jr., both of New York City, of counsel), for appellant Marine Midland Trust Co. of New York, trustee.

Otis F. Glenn, M. L. Bell, W. F. Dickinson, and W. F. Peter, all of Chicago, Ill., Clifton P. Williams, and Wilkie Bushby, of New York City, for appellees.

Alexander & Green, of New York City, and Winston, Strawn and Shaw, of Chicago, Ill., for appellee Protective Committee for General Mortgage 4% Gold Bonds of Chicago, R. I. & P. Ry. Co.

Root, Clark, Buckner & Ballantine, of New York City, for appellee, Protective Committee for First and Refunding Mortgage 4% Gold Bonds and Secured 4½% Gold Bonds of Chicago, R. I. & P. Ry. Co.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

The ten appeals which are presented for our determination involve the same order. Five appeals were allowed by the District Court and five appeals were allowed by this court. The ruling attacked was an administrative order made by the trial court in proceedings under section 77, Bankr.Act, 11 U.S.C.A. § 205 note, in the course of the debtor's operation by the trustees. It bears date of July 22, 1936, and protects the debtor whose creation of a lien upon its assets made possible the raising of money to cover necessary expenditures to maintain the properties of the debtor and its subsidiaries.

The court had previously authorized the expenditure of $4,500,000 for maintenance of way and for additions and betterments on the properties of the debtor and its subsidiaries during the calendar year of 1936, and the order appealed from was to create a lien to secure the loan and thereby lessen the rate of interest and insure the negotiation of the loan. The order provides that the trustees of the debtor should have a "first and paramount lien (subject only to the lien of taxes and assessments) upon the franchises, property and assets, whether real, personal or mixed, constituting the estate of each of the said subsidiary debtors."

The various appeals are by trustees named in the mortgages given by certain subsidiaries, the representatives of bondholders, and representatives of interested parties who hold bonds covering the properties of one or more of the subsidiary debtors. The lien draws interest at the rate of 3½ percent.

Paragraphs 4 and 5 of said order are set forth below.*

* "4. If the Certificates issued by the Trustees of the principal debtor, pursuant to Order No. 86, shall be retired before maturity (otherwise than by issuance in exchange therefor of other certificates of the Trustees of the principal debtor, or through the use of funds obtained through the issuance of such Trustees' Certificates), the amount of the liens on the estates of the several subsidiary debtors will be discharged or reduced proportionately.

"5. (a) The right is reserved by the Court to apportion equitably the lien of the Certificates issued by the Trustees of the principal debtor as between the respective mortgage divisions in the estate of the principal debtor, to reflect the expenditure of funds under the program of expenditures for maintenance of way and

It may be observed at the outset that the objections to this order are not directed to the authorization of a lien nor to the expenditure of the money nor the use of the borrowed money upon the property of the subsidiaries. The objections are to the supplanting of the mortgage liens in cases where it is alleged the subsidiary is already a creditor of the debtor. It is insisted that the debtor's estate is indebted to at least two subsidiaries in sums exceeding the amount which has been or will be expended upon the property of said subsidiaries. The trustees deny this fact and assert that at the present time it is impossible to state whether there is a credit due the subsidiary from the estate of the debtor or whether the subsidiaries are indebted to the trustees. They further assert that when that fact is ascertained the said subsidiary will be credited with the net income from operation of said subsidiary, if there be any net, and the adjustment will then be made.

Supporting their position the trustees call attention first to the terms of the order above quoted and second to the previously entered order bearing date of June 26, 1934, which reads in part as follows:

"The Court reserves the right, upon application by any of the parties to these proceedings at any time during the pendency thereof, to determine upon an equitable adjustment as between all those interested in this proceeding with respect to any use which may have been made of any tolls, earnings, income, rents, issues and profits of any portion of the trust estate."

Without passing upon the merits of the fact controversy, it is sufficient to say that the appeals are premature. Objections are made when the objectors are unable to point to proof that they are, or will be, hurt. All of the objections which the appellants advance will disappear if, during the operation of the property by the trustees, the net earnings of a subsidiary are sufficient to meet the expenditures represented by the lien in question. If they do not, the liens will and should stand.

It is apparent from a reading of the various orders which have been made that Judge Wilkerson sought to preserve the rights of all the various subsidiaries and at the same time to empower the trustees promptly to make necessary and proper expenditures so that the largest possible revenues might be obtained by the trustees from the operation of said subsidiaries. It was not the court's intention, as we read the orders (and counsel for trustees support this view), to in any way unnecessarily cloud or impair the existing liens upon the subsidiaries' property held by appellants and those similarly situated.

It is true that two subsidiaries assert that there have been substantial net earnings from the operations of their properties by the trustees, but this is disputed or at least it is asserted that the reports of gross earnings and gross expenses are such as to make it impossible for any one to intelligently assert, at this time, that there is a net profit from such operations by the trustees. The court could hardly be expected, after protecting all parties, to stop all operations of the railroad and conduct a trial of an issue of fact respecting revenues and expenditures to date of a subsidiary when the pressing and all important need of the hour was to at once improve operating conditions so as to realize the largest possible net income.

It is not questioned but that the improvements and betterments were necessary, nor could or should they be delayed until the fact issue was determined.

Moreover, the operating costs, as well as revenues, vary considerably, and a showing for one month or half year, would not be very helpful.

The order is

Affirmed.

structures and for additions and betterments referred to in subdivision (d) of paragraph 3 of Petition for Order No. 86; and to apportion equitably the burden of the liens created pursuant to the provisions hereof upon the estates of the subsidiary debtors as between any mortgage divisions thereof.

"(b) The right is reserved by the Court, as provided in Order No. 45-A and Order No. 42-A, to adjust all of the respective claims of all the mortgage divisions of all the several estates *inter sese* with respect to the use of the revenues of such divisions, and in connection with such adjustment, or otherwise, to adjust equitably as between said estates and all mortgage divisions all rights arising out of the use of any of such revenues or of the proceeds of the Trustees' Certificates provided for in Order No. 86.

"(c) Nothing contained herein shall in any manner, affect any right or lien of the holders of the Trustees' Certificates upon the estate of the principal debtor, as heretofore created and established."